## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEFANI NASSER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CITY STORAGE SYSTEMS LLC d/b/a CLOUDKITCHENS, <br><br> Defendant. | Civil Action No. <br><br> CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

Plaintiff Stefani Nasser ("Plaintiff") brings this action on behalf of herself and all others similarly situated against City Storage Systems LLC d/b/a Cloudkitchens ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

### NATURE OF THE ACTION

1.      Defendant markets, advertises, and sells virtual restaurants (the "Virtual Restaurants") on food delivery platforms, including UberEats, Grubhub, Seamless, and Postmates (the "Platforms") throughout the United States, including in New York. Defendant markets its Virtual Restaurants in a systematically misleading manner by misrepresenting the true origin of the food it displays on the Platforms. Specifically, Defendant lists its Virtual Restaurants with all of the indicia of a regular brick-and-mortar restaurant. But Defendant's Virtual Restaurants do not exist. Instead, they are merely "virtual storefronts" which outsource the actual cooking to other existing restaurants and delis, who, in turn, use a shared kitchen to

service other menus (including their own).

2.     Defendant markets its Virtual Restaurants using misleading names and food categories, putting consumers at risk of health complications (due to cross-contamination) and violating their dietary restrictions (such as Veganism, Kosher, and Halal). Moreover, Defendant's Virtual Restaurants flout the hygiene scores issued by health departments and do not match the quality and appeal shown on their menus. Some examples of Defendant's most prominent Virtual Restaurants are depicted below by way of illustration:

| **Phuket I'm Vegan Menu** | **Menu From Actual Restaurant** |
|:---:|:---:|

 

## Real World Locations Of Defendant's Virtual Brands

### Virtual Brand

### One of Associated Physical Addresses















## Virtual Brand

## One of Associated Physical Addresses



**Excuse My French Toast**
1528 Amsterdam Ave





**LA Breakfast Club**
59 4th Ave   Switch location
3.2 (17 ratings)  66% Good food  92% On time delivery  50% Correct order





**Send Noods**
1842 W. Washington Blvd.





**B*tch Don't Grill My Cheese**
106 Jay St   Switch location
3.7 (37 ratings)  71% Good food  92% On time delivery  71% Correct order





**Groovy Island Pizza Co.**
2351 John F. Kennedy Blvd





**Pimp My Pasta**
95 Delancey St • (347) 855-3069
2.8 (31 ratings)  30% Good food  86% On time delivery  76% Correct order



4

| Virtual Brand | One of Associated Physical Addresses |
|---|---|



**F*cking Good Pizza**
53 S Main St • (973) 928-6729
⭐ 3.4 (10 ratings)  50% Good food  100% On time delivery  100% Correct order





**OMG BBQ LOL**
122 S Union St





**Bob's Kabobs**
11086 Santa Monica Blvd





**Beverly Hills Platters**
601 N Interstate Hwy 35





**Pastrami & Pickles Delicatessen**
7300 Topanga Canyon Blvd





**Sunny & Fine's Breakfast Burritos**
889 Broadway  Switch location
⭐ 2.8 (61 ratings)  64% Good food  45% On time delivery  83% Correct order



5





| Dirty Little Vegan Menu Item Advertised | Actual Food Item Received (Across the Nation) |
|---|---|



| Pasta Glory Menu Items Advertised | Actual Food Item Received (Across the Nation) |
| --- | --- |









3.     As discussed in greater depth below, the above examples reveal the lack of quality and deception resulting from Defendant's fraudulently advertised Virtual Restaurants on the Platforms. Defendant does this behind the backs of consumers, who are misled into believing that their orders come from regular restaurants whose online menus match their physical presence.

4.     As a result of its deceptive conduct, Defendant is, and continues to be, unjustly enriched at the expense of its customers.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.[1]

6.     This Court has personal jurisdiction over Defendant because it conducts substantial business within New York, including the sale, marketing, and advertising of the Virtual Restaurants. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchases from Defendant.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

---

[1] Pursuant to the most recent filings with the California Secretary of State, Defendant is a Delaware limited liability company whose members are Travis Kalanick and Diego Berdakin—both citizens of the state of California. Exhibit A.

## **PARTIES**

8.      Plaintiff Stefani Nasser is a citizen of New York, residing in Queens, New York.
Plaintiff ordered food from Defendant's Virtual Kitchens for her personal use through the
Platforms on various occasions within the applicable statute of limitations. Because Defendant
obfuscates its ownership of the Virtual Restaurants—which are often listed and subsequently
deleted within a short period—Plaintiff and her counsel cannot determine at this time the exact
number of times that Plaintiff ordered from Defendant's Virtual Restaurants. Nonetheless,
Plaintiff's most recent ascertainable purchase from one of Defendant's Virtual Restaurants took
place on August 21, 2022, from Defendant's "Phuket I'm Vegan" Virtual Restaurant operating
out of 63-55 Wetherole St, Queens, NY 11374. When placing her order, Plaintiff saw that
Defendant branded its Virtual Restaurant as "Phuket I'm Vegan," which she understood to be the
name of a brick-and-mortar restaurant offering online delivery. Furthermore, before placing her
order, Plaintiff reviewed Defendant's Phuket I'm Vegan menu along with the pictures of the
food items, which she believed were illustrative of the actual food prepared by the brick-and-
mortar restaurant that she was ordering from. Finally, as a result of Defendant's overall branding
of its Phuket I'm Vegan Virtual Restaurant, Plaintiff was led to believe that her order came from
a strictly vegan kitchen. Plaintiff saw and relied on Defendant's representations when she
decided to purchase a "Vegan Pad Thai" for approximately $15.99. Plaintiff saw those
representations prior to and at the time of her purchases and understood them as a representation
and warranty that her food delivery orders were prepared by a local brick-and-mortar restaurant
called "Phuket I'm Vegan" which prepared exclusively vegan food. Plaintiff, who follows a
strictly vegan and kosher diet, relied on these representations and warranties in deciding to place
her order from Defendant's Virtual Restaurants. Accordingly, those representations and

warranties were part of the basis of her bargains, in that she would not have purchased the food items from Defendant's Virtual Restaurants on the same terms, if at all, had she known that those representations were not true. Furthermore, in making her purchases, Plaintiff paid a substantial price premium due to Defendant's false and misleading claims regarding the origin and quality of its Virtual Restaurants' offerings. Plaintiff, however, did not receive the benefit of her bargains because the Virtual Restaurants were not, in fact, real brick-and-mortar restaurants which created the brand, menu, or pictures of the food depicted on the Platforms. In fact, Plaintiff's last order from Defendant's "Phuket I'm Vegan" Virtual Restaurant was prepared by a restaurant called UThai which used the same kitchen to prepare its own menu of non-vegan Thai dishes—including Pad Thai dishes with eggs, chicken, beef, shrimp, and squid.[2] Had Plaintiff known that Defendant's representations and warranties about its Virtual Restaurants were false, she would not have purchased food from them or would have paid substantially less for her orders.

9. In addition, in making her purchases, Plaintiff did not see, nor did Defendant disclose, that the Virtual Restaurants' menus were cooked in the kitchens of other operating brick-and-mortar restaurants. Those omissions were material to Plaintiff because had she known that Defendant's representations and warranties were qualified by such a disclosure, she would not have relied on them in placing her orders. As such, Plaintiff would not have ordered from Defendant's Virtual Restaurants, or would have paid substantially less for her orders, had she seen the missing disclosures on Defendant's marketing of its Virtual Restaurants.

10. Defendant City Storage Systems LLC d/b/a Cloudkitchens is a Delaware limited liability company with its principal place of business in Glendale, California. Defendant is

---

[2] https://uthainyc.com/menu/74285055 (last accessed August 22, 2023).

owned by two members: Travis Kalanick, Diego Berdakin—both citizens of the state of California. Defendant owns, manages, markets, advertises, and/or sells the Virtual Brands throughout New York and the United States.[3]

## **GENERAL ALLEGATIONS**

### *Overview of Online Food Delivery Business*

11.    Since Pizza Hut first launched its online food delivery in 1994, ordering food from restaurants has become part and parcel of the American lifestyle. The restaurant takeout business is simple in principle: delivery orders are viewed as an extra table for a restaurant, serviced by a driver instead of a waiter.

12.    As technology advanced, consumers' demand for online delivery also grew; forcing restaurants to depend on food delivery platforms such as Uber Eats, GrubHub, Postmates, and DoorDash (the "Platforms") to manage and simplify their online delivery process. This demand for online food delivery underwent an unprecedented spur of growth after the COVID-19 outbreak: which forced consumers to rely on food delivery services due to state imposed lockdowns and social distancing measures.

13.    According to recent estimates, the revenue of the meal delivery market in the United States is projected to reach 87 billion U.S. dollars by the end of 2023.[4] Ordering food online has become the norm, rather than the exception, for how consumers interact with

---

[3]Cloudkitches, *Kitchen Services Terms and Conditions* at ¶ 14(a) ("The public may be able to place orders via the Digital Platform for brands owned and operated by you or also brands owned and operated by us (if you've signed an agreement to comanage Future Foods brands)," found at https://cloudkitchens.com/documents/legal/us/ksa/ksa070921.pdf (last accessed August 22, 2023) and attached as Exhibit B.

[4] Statista, *Meal Delivery - United States* (May 2023), https://www.statista.com/outlook/dmo/online-food-delivery/meal-delivery/united-states (last accessed August 22, 2023).

restaurants. Recent estimates indicate that approximately 60% of Americans order food delivery at least once per week.[5] The Platforms capitalized on this growing demand and now enjoy a virtual monopoly over the meal delivery market.[6]As such, consumers rely that the information posted by restaurants on the Platforms is true, accurate, and safe.

***Overview of Consumer Food Delivery Expectations***

14.    Online food delivery has redefined how Americans consume food, but not their expectations about the restaurants that they order from. According to a recent survey conducted by the National Restaurant Association in May of 2023, 93 percent of Americans said they trust that the food they order for delivery is safe to eat.[7] This level of trust makes sense, given that most consumers trust that the FDA and local health department agencies hold restaurants to a high standard of hygiene and safety before allowing them to offer food to the public.

15.    For example, shortly after the New York City Department Of Health introduced a grading system that evaluates restaurants based on their sanitary inspection scores: "70% of adults reported noticing grades in restaurant windows [and of] those who do, 88% consider grades when deciding where to eat."[8] A recent survey conducted by the FDA similarly estimates

---

[5] Zippia, *18+ Food Delivery Statistics [2023]: Online Ordering Industry Numbers You Need To Know* (Feb. 28, 2023), https://www.zippia.com/advice/food-delivery-industry-statistics/ (last accessed August 22, 2023).

[6] Bloomberg Second Measure, *Which company is winning the restaurant food delivery war?* (Aug. 9, 2023), https://secondmeasure.com/datapoints/food-delivery-services-grubhub-uber-eats-doordash-postmates/ (last accessed August 22, 2023).

[7] National Restaurant Association, *Food Safety Confidence Outpaces What People Really Know in the Kitchen* (May 17, 2023), www.restaurant.org/research-and-media/media/press-releases/food-safety-confidence-outpaces-what-people-really-know/ (last accessed August 22, 2023).

[8] New York City Department Of Health And Mental Hygiene, *Restaurant Letter Grading: The First Year* (July 2011), https://www.nyc.gov/assets/doh/downloads/pdf/rii/restaurant-grading-1-year-report.pdf (last accessed August 22, 2023).

that approximately 66% of the general population has decided not to eat in a restaurant "because of [its] health inspection score or grade."[9]

16.    Simply put, consumers expect that the food they order from restaurants is safe to eat based on state and federal regulatory standards and supervision; and most consumers—including those in heavily populated cities like NYC—rely on a restaurant's hygiene grades and reputation in deciding whether to order food from that restaurant altogether.

***Overview of Defendant's Secretive Business***

17.    Defendant is a leading industry player in renting out ghost kitchens throughout the country under its secretive "Cloudkitchens" business model. Founded by Travis Kalanick (the former CEO of Uber who was fired for his alleged unethical business practices), Cloudkitchens' business involves buying large commercial warehouses, remodeling them to fit numerous standalone kitchens, outfitting them with the bare minimum kitchen essentials, and subsequently renting them out to restaurateurs that are interested in operating a delivery-only "ghost kitchen." A ghost kitchen is a novel business model that permits food entrepreneurs to operate delivery-only restaurants. Defendant's Cloudkitchens' fully-equipped shared kitchens facilitate the growth of ghost kitchens by reducing their overhead—such as real estate costs, permits, kitchen equipment, staff, and maintenance fees.[10] In the last two years alone, Cloudkitchens raised over $850 million dollars and has a current valuation of approximately $15 billion dollars.[11]

---

[9] U.S. Food & Drug Administration, *FDA's Food Safety and Nutrition Survey 2019 Survey* at pg.51 (March 2021), https://www.fda.gov/media/146532/download?attachment (last accessed August 22, 2023).

[10] Cloudkitchens, *Commercial kitchens built for delivery*, https://cloudkitchens.com/commercial-kitchens/ (last accessed August 22, 2023).

[11] Insider, *Travis Kalanick's food startup CloudKitchens has tripled its valuation to $15 billion and tapped an Amazon veteran as CFO* (Jan. 5, 2022), https://www.businessinsider.com/travis-kalanick-cloudkitchens-startup-is-cutting-jobs-2022-11 (last accessed August 22, 2023).

18.     Despite its growth as a major player in the food industry, Defendant operates in the shadows—prohibiting its employees from naming the company as their employer on their LinkedIn profiles—while many of Defendant's customers and employees have left due to the company's broken promises and toxic work environment.[12] But Defendant's most devious business model is called Future Foods: its secret branch[13] that operates the Virtual Restaurants at issue in this Complaint.

***Defendant's Virtual Restaurants Flout Regulatory Oversight and Consumer Expectations***

19.     As COVID-19 wreaked havoc across the country, it left restaurants with steep leases and empty tables. As these restaurants struggled to survive, Defendant came up with another predatory and unscrupulous business: it created a franchise of virtual storefronts (branded with provocative names and colorful pictures) that only exist on the Platforms while leaving the struggling restaurants to do the actual cooking (*i.e.*, the "Virtual Restaurants"). Aware of its inherently deceptive business model, Defendant created yet another company name to own and manage these Virtual Restaurants: Future Foods.

20.     Defendant's Future Foods operates under the exact opposite business model of its Ghostkitchens company: instead of leasing out commercial space to other restaurants, it leverages the kitchens of existing restaurants to cook and prepare its Virtual Restaurants' orders. As Defendant explains on its Future Foods website:

> "You've heard the word "virtual" in the context of ghost kitchens a few times in this article, but we must clarify that ghost kitchens aren't the same thing as virtual brands. Virtual brands are digital storefronts on delivery platforms like Uber Eats, Doordash, Caviar, Grubhub, etc. The fact that they are entirely digital storefronts on delivery platforms is where the name comes from. Virtual brands are called "virtual" because the customer can only see and order from these storefronts online.

---

[12] *Id.*
[13] *See Supra*, footnote 3.

Restaurants use the same kitchen to fulfill orders from a new, delivery-only brand actively managed and marketed by FutureFoods."[14]

21.    In other words, Defendant's Virtual Restaurants exist on the Platforms as a hoax—a mirage that permits struggling and/or opportunistic brick-and-mortar restaurants to make an additional profit without risking their reputation:

> "So your Italian restaurant signed up for Future Foods. After answering any questions, we (the Future Foods team) pair your Italian restaurant with our virtual brand, Pasta Glory. We send you a tablet and menu and handle everything from customer support to marketing. You continue to run your restaurant as usual—same equipment, same shopping list. We send you a weekly check with all your earnings; you continue to make pizza (just more of it)."[15]

Defendant proceeds to outline its Virtual Restaurants business in greater granularity:

> "Need more info? Let's breakdown how Future Foods sets your restaurant up with Virtual Restaurants IRL
> 1. We build brands. We create, manage, and grow the best virtual brands in the world
> 2. You cook the food. We handle everything from customer support to marketing; you just cook
> 3. They deliver the food. Delivery services like Uber Eats, Grubhub, and more deliver for you
> 4. We pay you. We'll send you a weekly check with all of your earnings; you never pay us"[16]

22.    Although Defendant's business model seems like a low-risk "golden ticket" for restaurants (as Defendant puts it), it comes at a hefty price: losing their consumers' trust. As one restauranteur who enrolled in Defendant's Future Foods explains:

---

[14] Future Foods, *What the Heck is a Virtual Brand?* (April 15, 2022), https://futurefoods.io/blog/what-is-a-virtual-brand-future-foods-restaurants/ (last accessed August 22, 2023).
[15] *Id.*
[16] *Id.*

> "The downside is, if something goes wrong, the customer might be upset and they feel like you're hiding, or that you're not being honest with them[] That's something I can lose sleep over, because I don't want anyone to think that I am trying to do something dishonest. We didn't build our business on dishonesty."[17]

Yet, dishonesty and betrayal are exactly what consumers think and feek after discovering that a restaurant lured them into purchasing their food under false pretenses through Defendant's alter-ego Virtual Restaurants.

23.    Indeed, as soon as ghost kitchens began to proliferate, the New York City Council held a hearing where it expressed its concerns about the business model. Below are a few remarks from the Chairperson of NYC's Small Business Committee directed at the Deputy Commissioner of NYC's Department of Health:[18]

> "Commissioner, I think [that ghost kitchens are] more than interesting. It should be an alarm and a concern, especially when we're dealing with foods like sushi or shellfish [] that New Yorkers and people have allergic reactions to, or could be, their health could be in jeopardy because we're not informing them of the standard that those kitchens and restaurants are operating at. Which is contrary to what our traditional brick-and-mortar establishments are currently held to. I think it's much more alarming that we understand and the more we discuss this the more alarms and bells should be ringing in our minds as government and agencies and departments and the roles that we have to protect New Yorkers. The letter C in a sushi restaurant or a seafood restaurant I can assure you would deter people from eating there. But if you're operating under a bistro name, not aware that your seafood is being prepared at that same eatery, **it's deception**." (emphasis added).

---

[17]Vice*, The Mysterious Case of the F\*cking Good Pizza* (March 30, 2021), https://www.vice.com/en/article/qjpgd7/the-mystery-of-fcking-good-pizza-travis-kalanick-cloudkitchens-future-foods-delivery-restaurants (last accessed August 22, 2023).
[18] The New York City Council, *Oversight: "Ghost Kitchens "Virtual Restaurants" and the Future of the Restaurant Industry*, Hearing Transcript (Feb. 6, 2020), Exhibit C at pg. 24.

*Defendant's Virtual Restaurants and Consumer Reactions*

24.    Although Defendant attempts to keep its Virtual Restaurants as secretive as possible, journalists and consumers alike have been able to identify at least the following Virtual Restaurants owned by Defendant:[19]

(1) Suny & Fines
(2) Dirty Little Vegan
(3) Copacabana Acai
(4) La Bella Burriteria
(5) Brekki Bagels
(6) Pasta Glory
(7) Breakfat Beutie
(8) Churros y Churros
(9) Charcootz
(10) LA Breakfast Club
(11) Excuse My French Toast
(12) Egg the F* Out
(13) B*tch Don't Grill My Cheese
(14) Send Noods
(15) Brooklyn Calzones
(16) Cupid's Wings
(17) Cheeky's Cheesesteaks
(18) Groovy Island Pizza
(19) Pimp My Pasta
(20) OMG BBBQLOL
(21) F*cking Good Pizza
(22) Hummus Hero
(23) Beverly Hills Platters
(24) Bob's Kabobs
(25) Fabulous Falafel
(26) Pastrami & Pickles
(27) Big Hotdog Energy

---

[19] *See supra,* footnote 17; Hngry, *Amidst COVID-19, CloudKitchens Redefines Restaurants As We Know It* (April 5, 2022), https://www.hngry.tv/articles/amidst-covid-19-cloudkitchens-redefines-restaurants-as-we-know-it/ ; The Wall Street Journal, *Saudis Back Travis Kalanick's New Startup* (Nov. 7, 2019), https://www.wsj.com/articles/saudis-back-travis-kalanicks-new-startup-11573122604 ;The Verge, *THE GREAT WINGS RUSH* (June 1, 2021), https://www.theverge.com/c/2021/6/1/22456930/chicken-wings-delivery-virtual-brands ; The Markup, *What Are Ghost Kitchens* (Sept. 15, 2020), https://themarkup.org/the-breakdown/2020/09/15/ghost-kitchens-virtual-food-delivery-restaurants

(28) Burger Mansion
(29) Killer Wings
(30) Devil's Soul Food
(31) Phuket I'm Vegan

25.     As alleged above, Defendant markets these Virtual Restaurants on the Platforms as high-quality restaurants—including exotic menus, eye-capturing depictions of the advertised dishes, and hefty price tags. Despite this, however, Defendant's Virtual Restaurants operate from local brick-and-mortar restaurants and delis that lack the capacity to prepare the Virtual Restaurants' dishes with the same level of quality and consistency maintained by regular chain restaurants that handle a large volume of orders (like Applebee's, Olive Garden, or The Cheesecake Factory). In fact, the restaurants and delis that Defendant uses are often poorly rated—hence why they are willing to risk their own brands and reputations. And because they use the same kitchen to prepare multiple menus, the chances of cross-contamination are high.

26.     According to a report from the National Restaurant Association, 72% of adults find it material to know that their food delivery comes from a real restaurant that they can visit in person.[20] This percentage is likely higher for Defendant's Virtual Restaurants—whose shared kitchens and overall poor quality affect consumers with food sensitivities and/or dietary restrictions (such as Veganism, Kosher, and Halal).

27.     Defendant's Virtual Restaurants' business model is so egregious that it has caught the attention of various journalists. For instance, an article published by Hngry, a popular food media platform, explains the highly aggressive tactics and devastating effects of Defendant's business:

---

[20] Cision, *National Restaurant Association Releases 2021 State of the Restaurant Industry Report* (Jan. 26, 2021), https://www.prnewswire.com/news-releases/national-restaurant-association-releases-2021-state-of-the-industry-report-301214592.html (last accessed August 22, 2023).

"CloudKitchens' sales team has been aggressively approaching restaurants in cities like LA, Austin, Chicago, New York, and Houston under the guise as delivery consultants using the "FutureFoods" moniker… Depending on the establishment's cuisine, "FutureFoods" can license any one of its 28+ in-house concepts without lifting a finger in exchange for a 10% commission on top of the traditional 30% delivery fee… In my conversations with some of these restaurateurs that had bit the "FutureFoods" bait, many seemed confused by what they actually signed up for and what the brands actually represented." [The article continues by providing an example and illustration of Defendant's partnership with a local restaurant]: "As a Lebanese grill, FutureFoods set Bitar's up with concepts like Taqueria Medeterranea, Holy Hummus, Bob's Kabobs, Saint Pita, Keto Kabobs, and Beverly Hills Platters which are templated permutations of the same dishes and ingredients. All the photography and branding is provided by "FutureFoods" without much oversight to ensure that customers actually get the dishes as advertised."[21]

28.    In yet another thorough article, a journalist from Vice describes Defendant's deceptive business model:

"Instead of holding them to strict product parameters, several restaurant owners said, Future Foods seemed mainly concerned with giving them the tools they need to move inventory out the door. And rather than subject them to quality-control checks or undercover shoppers, the Future Foods model effectively outsources that work to the consumer: the positive or negative reviews that are left online, and the natural market adjustment that occurs as they impact customers' purchasing decisions."[22]

29.    Defendant's conduct has also drawn the attention and ire of customers across the country, with countless angry customers taking to the Internet and social media to voice their discontent over Defendant's deceptive business practices:

---

[21] Hngry, *Accidental Ghost Kitchens Pervade As Restaurants Struggle To Reopen* (June 18, 2020), https://www.hngry.tv/articles/accidental-ghost-kitchens-pervade-as-restaurants-struggle-to-reopen/ (last accessed August 22, 2023).
[22] *See supra*, footnote 18.

## <u>Online Complaints</u>

1)    Reddit Post (Ohio)[23]

⬆

**17**    **Stay away from Phuket I'm Vegan**

⬇

Posted by u/[deleted] 2 years ago

Me and my wife just ordered from Phuket I'm vegan (that says in the name and description that it's a vegan restaurant) via uber eats and there was so much egg in our Thai fried rice and pineapple fried rice. We found a review from a different one in Washington DC and they said there was meat in their dish so I just wanted to announce someway to other fellow vegan people to stay away from this place. It's super sketchy. We reported it as a safety allergy issue because now my wife is sick.

Edit 1: I would like to clarify that the name of the restaurant and the description of the dish both stated they were vegan like I said in original post. We always double check because my wife has several allergy/intolerances. So we did our due diligence. I'm making this post to warn others who could also become sick, not to crap on anyone's culture. I realize eggs are frequently used in certain Asian dishes, but if a restaurant claims it's meals are vegan(ie no meat dairy or eggs) it is a health hazard to anyone with an allergy to those ingredients.

💬 12 Comments    ↗ Share    🔖 Save    ⋯

2)    Reddit (Missouri)[24]



**Luchadeer** · 2 yr. ago

They also run Phuket I'm Vegan, which is notorious for messing up orders and sending people meat/eggs. It's really annoying because the entire appeal of "100% vegan" restaurants is not having to worry about things like that. In my opinion these "ghost restaurants" should have to disclose ownership and cross-contamination risks up-front.

⬆ **39** ⬇    Share    ⋯

---

[23] https://www.reddit.com/r/Columbus/comments/o98je4/stay_away_from_phuket_im_vegan/ (last accessed August 22, 2023).
[24] https://www.reddit.com/r/kansascity/comments/rcmudl/if_anyone_remembers_the_sushi_karma_post_from_a/ (last accessed August 22, 2023).

3)  Reddditt (Virginia)[25]





4)  Reddit (New Jersey)[26]



---

5)      Yelp (Hawaii)[27]



**Michael L.**
East Lansing, MI
📷 1   💬 5   🖼 2

 12/11/2021

📷 1 photo

I ordered three orders, all with tofu. In one of the orders, there was beef instead of tofu. They mixed it up. They were kind about it, but what got me upset is that this place is marketed as vegan when it is not.

It is NOT a vegan restauraunt.
It is NOT a healthy restauraunt.

It is a regular thai food restauraunt and what you see on doordash or wherever is just their vegan dishes.



In the upper right, the beef dish

6)      Yelp (Florida)[28]

**Sergio V.**
Deltona, FL
📷 26   💬 5   🖼 1

 6/12/2022

📷 1 photo   ⓘ First to Review

I ordered Pasta and Garlic Bread. 1st they charged me $4.78 for garlic bread and they gave me one small piece of garlic bread. The pasta barely had any sauce and it definitely didn't have any flavor. The pasta tasted like if I had Covid and no taste buds.



Fettucine Alfredo and Garlic Bread

---

[27] https://www.yelp.com/biz/phuket-im-vegan-honolulu (last accessed August 22, 2023).
[28] https://www.yelp.com/biz/pasta-glory-miami (last accessed August 22, 2023).

7)     Yelp (New York)[29]



8)     Yelp (Nevada)[30]





---

[29] https://www.yelp.com/biz/pasta-glory-new-york (last accessed August 22, 2023).
[30] https://www.yelp.com/biz/dirty-little-vegan-las-vegas-2 (last accessed August 22, 2023).

9)    Yelp (California)[31]



**T S.**
Oakland, CA
🖼 1   📹 46   📷 32

⭐️☆☆☆☆  8/6/2022

📷 1 photo   ⓘ First to Review

First time ordering from this restaurant. 2353 is a ghost kitchen. I ordered a few items: bogo free burger, sausage sandwich, Mac n cheese, and nachos. The sausage sandwich came in a burger bun style. I thought it was a link type sausage. The nachos did t have any cheese! And the worst part, they didn't even pack the Mac! Wtf?!? I ordered thru Uber Eats and the restaurant doesn't have a phone number to call.
Please double check orders before you staple that bag shut! And make sure the order is correct before bagging it! I'm really annoyed.



10)    Yelp (Texas)[32]



**Aidan A.**
Montrose, Houston, TX
🖼 0   📹 1   📷 2

⭐️☆☆☆☆  2/6/2023

📷 2 photos

I ordered on Uber Eats. I'm not the type of person to ever write a review, and a negative one at that. But the service that I received once I opened the bag was horrific. This is a VEGAN restaurant and I received ACTUAL chicken wings with my soggy cauliflower wings. I thought maybe I ordered incorrectly, but I knew something was up when my friend realized that her burger had a McDonalds meat patty in her VEGAN burger. I wish I was making this up. Do not go to the place. It should be out of business.



Real meat burger patty inside of her burger.    Real chicken. We checked and it wasn't tofu.

---

[31] https://www.yelp.com/biz/dirty-little-vegan-oakland (last accessed August 22, 2023).
[32] https://www.yelp.com/biz/dirty-little-vegan-houston (last accessed August 22, 2023).

30.    The above negative reviews and illustrations are just a sampling of the complaints which reveal a widespread pattern of uniform unlawful conduct by Defendant, underscoring the artifice devised and employed by Defendant to lure and deceive millions of consumers into purchasing food from its Virtual Restaurants under false pretenses.

31.    Defendant's misleading and deceptive practice proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's conduct.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Specifically, the Classes are defined as:

**Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased food from Defendant's Virtual Restaurants primarily for personal, family or household purposes, and not for resale.

**New York Subclass:** All persons residing in New York who, during the maximum period of time permitted by the law, purchased food from Defendant's Virtual Restaurants primarily for personal, family or household purposes, and not for resale.

33.    The Classes do not include (1) Defendant, their officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

34.    Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories

of liability.

35.     ***Community of Interest***: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

36.     ***Numerosity***: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. The precise number of the members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party vendors.

37.     ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a)     Whether the marketing, advertising, and other promotional materials of the Virtual Restaurants are deceptive;

(b)     Whether Defendant fraudulently induced Plaintiff and the members of the Classes into purchasing food from the Virtual Restaurants;

(c)     Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

(d)     Whether Plaintiff and the members of the Classes are entitled to statutory damages;

(e)     Whether Plaintiff and the members of the Classes are entitled to attorney's fees

and costs.

38.    ***Typicality:*** The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased food from Defendant's Virtual Restaurants, and suffered a loss as a result of those purchases.

39.    ***Adequacy***: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because she has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel.

40.    Moreover, the proposed Classes can be maintained because they satisfy both Rule 23(a) and 23(b)(3) because questions of law or fact common to the Classes predominate over any questions affecting only individual members and that a Class Action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)    The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

(b)    If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members of the Classes to seek to redress their claims other than through the procedure of a class action; and

(c)    Absent a class action, Defendant likely will retain the benefits of their wrongdoing, and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
### Violation of State Consumer Protection Statues[33]
### (On Behalf of Plaintiff and the Nationwide Class)

41.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

42.     The Consumer Protection Statutes of the Nationwide Class members prohibit the use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

43.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by misrepresenting that: (1) the names of the Virtual Restaurants were derived from the names of legitimate brick-and-mortar restaurants; (2) that the menus and food depictions of the Virtual Restaurants were prepared and photographed by

---

[33] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.;  Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

legitimate brick-and-mortar restaurants; and (3) that the food offered by the Virtual Restaurants was prepared and cooked in a dedicated kitchen that only handled the ingredients necessary to make those food items.

44.     Despite those representations, however, Defendant's Virtual Restaurants: (1) are named after fictitious, rather than actual, brick-and-mortar restaurants; (2) its menus and food pictures were neither prepared nor photographed by legitimate brick-and-mortar restaurants; and (3) the food offered by the Virtual Restaurants was neither prepared, nor cooked, in a restaurant exclusively devoted to preparing those food items. In addition, Defendant made material omissions of fact by failing to disclose that the Virtual Restaurants were prepared in unsupervised brick-and-mortar restaurants which use the same shared kitchen to service other restaurants' brands, menus, and food items.

45.     The foregoing deceptive acts and practices were directed at consumers.

46.     The foregoing deceptive acts and omissions of facts are misleading in a material way because they fundamentally misrepresent and fail to disclose the true nature of the food offerings from the Virtual Restaurants.

47.     As a result of Defendant's deceptive practices, Plaintiff and the Nationwide Class members suffered an economic injury because they would not have purchased (or paid a premium for) the food offered by the Virtual Restaurants had they known the veracity of Defendant's misrepresentations and omissions.

48.     On behalf of herself and the Nationwide Class members, Plaintiff seeks to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II
### Quasi-Contract/ Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class)

49.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

50.     To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

51.     Plaintiff and the Nationwide Class members conferred benefits on Defendant by purchasing food from the Virtual Restaurants through the Platforms.

52.     Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and the Nationwide Class members' purchases of the food offered by the Virtual Restaurants through the Platforms.

53.     Retention of those moneys under these circumstances is unjust and inequitable because Defendant induced Plaintiff and the Nationwide Class members to purchase its Virtual Restaurants' food through material misrepresentations and omissions of facts.

54.     These misrepresentations and omissions of facts caused injuries to Plaintiff and the Nationwide Class members because they would not have purchased (or paid a premium for) the food offered by the Virtual Restaurants had they known the veracity of Defendant's misrepresentations and omissions.

55.     Because Defendant's retention of the non-gratuitous benefits conferred to it by Plaintiff and the Nationwide Class members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## COUNT III
### Violation of New York G.B.L. § 349
### (On Behalf of Plaintiff and the New York Subclass)

56.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

57.    New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

58.    In its sale of the food offering from the Virtual Restaurants throughout the State of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

59.    Plaintiff and the New York Subclass members are consumers who purchased food from Defendant's Virtual Restaurants for their personal use.

60.    By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by misrepresenting that: (1) the names of the Virtual Restaurants were derived from the names of legitimate brick-and-mortar restaurants; (2) that the menus and food depictions of the Virtual Restaurants were prepared and photographed by legitimate brick-and-mortar restaurants; and (3) that the food offered by the Virtual Restaurants was prepared and cooked in a dedicated kitchen that only handled the ingredients necessary to make those food items.

61.    Despite those representations, however, Defendant's Virtual Restaurants: (1) are named after fictitious, rather than actual, brick-and-mortar restaurants; (2) its menus and food pictures were neither prepared nor photographed by legitimate brick-and-mortar restaurants; and (3) the food offered by the Virtual Restaurants was neither prepared, nor cooked, in a restaurant exclusively devoted to preparing those food items. In addition, Defendant made material

omissions of fact by failing to disclose that the Virtual Restaurants were prepared by unsupervised brick-and-mortar restaurants which use the same shared kitchens to service other restaurants' brands, menus, and food items.

62.     The foregoing deceptive acts and practices were directed at consumers.

63.     The foregoing deceptive acts and omissions of facts are misleading in a material way because they fundamentally misrepresent and fail to disclose the true nature of the food offerings from the Virtual Restaurants.

64.     As a result of Defendant's deceptive practices, Plaintiff and the Nationwide Class members suffered an economic injury because they would not have purchased (or paid a premium for) the food offered by the Virtual Restaurants had they known the veracity of Defendant's misrepresentations and omissions.

65.     On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT IV
### Violation of New York G.B.L. §350
### (On Behalf of Plaintiff and the New York Subclass)

66.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

67.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

68.     Defendant violated New York General Business Law § 350 by misrepresenting that: (1) the names of the Virtual Restaurants were derived from the names of legitimate brick-and-mortar restaurants; (2) that the menus and food depictions of the Virtual Restaurants were

prepared and photographed by legitimate brick-and-mortar restaurants; and (3) that the food offered by the Virtual Restaurants was prepared and cooked in a dedicated kitchen that only handled the ingredients necessary to make those food items.

69.     Despite those representations, however, Defendant's Virtual Restaurants: (1) are named after fictitious, rather than actual, brick-and-mortar restaurants; (2) its menus and food pictures were neither prepared nor photographed by legitimate brick-and-mortar restaurants; and (3) the food offered by the Virtual Restaurants was neither prepared, nor cooked, in a restaurant exclusively devoted to preparing those food items. In addition, Defendant made material omissions of fact by failing to disclose that the Virtual Restaurants were prepared by unsupervised brick-and-mortar restaurants which use the same shared kitchens to service other restaurants' brands, menus, and food items.

70.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

71.     Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

72.     As a result of Defendant's deceptive practices, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the food offered by the Virtual Restaurants had they known the veracity of Defendant's misrepresentations and omissions.

73.     On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendant, as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil

Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's

attorneys as Class Counsel to represent the Classes;

(b)    For an order finding in favor of Plaintiff and the Classes on all counts asserted

herein;

(c)    For compensatory, statutory and punitive damages in amounts to be determined

by the Court and/or jury;

(d)    For prejudgment interest on all amounts awarded;

(e)    For an order of restitution and all other forms of equitable monetary relief; and

(f)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees

and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable as of right.

Dated August 22, 2023                          Respectfully submitted,

                                               **GUCOVSCHI ROZENSHTEYN, PLLC**

                                               By:  /s/ Adrian Gucovschi
                                                     Adrian Gucovschi, Esq.

                                               Adrian Gucovschi
                                               140 Broadway, Suite 4667
                                               New York, NY 10005
                                               Tel: (212) 884-4230

adrian@gr-firm.com

*Counsel for Plaintiff and the Classes*